# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-1488-GW(RZx) | Date | September 20, 2010 |
|---|---|---|---|

Title  *Maximum Availability Limited v. Vision Solutions, Inc., et al.*

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | Tape No. |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Micah R. Jacobs | Kenneth L. Wilton |
| | Gina E. Och |

**PROCEEDINGS:** **DEFENDANT CHRIS THOMAS' MOTION TO DISMISS FOR LACK OF JURISDICTION  (filed 08/19/10);**

**DEFENDANT SIRIUS COMPUTER SOLUTIONS, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT (filed 08/20/10);**

**DEFENDANT VISION SOLUTIONS, INC.'S AND EVA SUCCI'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) (filed 08/20/10);**

**SCHEDULING CONFERENCE**

The tentative circulated is hereby adopted as the Court's final ruling (attached).  Court hears oral argument.  The above-entitled motions are **granted with leave to amend.**  Plaintiffs' will have until October 18, 2010 to **manually** file the Second Amended Complaint at the court's civil intake department.

The Court sets the following:

| | |
|---|---|
| Mediation cutoff | December 15, 2010 |
| Post-Mediation Status Conference | **December 16, 2010 at 8:30 a.m.** |
| Discovery cutoff | April 13, 2011 |
| Expert discovery cutoff | May 6, 2011 |
| Motion hearing cutoff | June 6, 2011 |
| Pretrial Conference | **July 14, 2011 at 8:30 a.m.** |
| Jury Trial | **July 26, 2011 at 9:00 a.m.** |

:  15

Initials of Preparer   JG

*Maximum Availability v. Vision Solutions, Inc.*, Case No. CV10-1488
Tentative Rulings on  (1) DEFENDANT VISION SOLUTIONS, INC.'S AND EVA SUCCI'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6);
(2) DEFENDANT SIRIUS COMPUTER SOLUTIONS, INC.'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO
STATE A CLAIM, OR IN THE ALTERNATIVE, FOR MORE
DEFINITE STATEMENT;
(3) DEFENDANT CHRIS THOMAS'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION.

## INTRODUCTION
### Procedural Background

Plaintiff Maximum Availability Limited ("Plaintiff" or "Maximum" ) originally filed this
action in the Northern District of California on December 7, 2009, against Defendants Vision
Solutions, Inc. ("Vision") and William Hammond ("Hammond"). Plaintiff's Complaint alleged
that Defendants made false or misleading statements in Vision's printed advertising and
marketing materials.  The Complaint contained claims for: (1) violation of Section 43(a) of the
Lanham Act, 15 U.S.C. § 1125, (2) violation of California's False Advertising Law ("FAL"),
Cal. Bus. & Prof. Code § 17500, et seq., and (3) violation of California's Unfair Competition
Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

On February 25, 2010, the matter was transferred to the Central District of California. On
April 1, 2010, this Court entered an order granting in part Plaintiff's motion for entry of a
preliminary injunction.  A motion for lack of personal jurisdiction by Defendant Hammond is
still technically pending, the Court having permitted Plaintiffs to engage in limited jurisdictional
discovery.  An Amended Complaint was filed on July 7, 2010, which added Sirius Computer
Solutions, Inc. ("Sirius"), Eva Succi ("Succi") and Chris Thomas ("Thomas") as defendants to
the existing claims.  No new claims for relief were alleged.

Now before the Court are: (1) Defendant Thomas's motion to dismiss pursuant to Rule
12(b)(2) of the Federal Rules of Civil Procedure (lack of personal jurisdiction), (2) Defendant
Vision's motion to dismiss the Second and Third Claims for Relief pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure, and (3) Defendant Sirius's motion to dismiss the First,
Second, and Third Claims for Relief pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal
Rules of Civil Procedure.

### Factual Allegations

Maximum is a New Zealand Limited Liability Company in the business of selling data
disaster recovery software solutions worldwide to businesses using IBM servers. See FAC ¶ 3.
Vision is a direct competitor of Maximum. Id. at ¶ 4.  Defendant Hammond is the Director of
Product Marketing for Defendant Vision. Id. at ¶ 5.  Defendant Sirius has its corporate
headquarters located in San Antonio, Texas, and maintains offices located throughout California.
Id. at ¶ 6.  It is a business partner and agent of Vision and sells Vision's software in competition
with Plaintiff. Id.  Both Vision and Sirius are subsidiaries of Thoma Bravo, LLC. Id. Vision

and Sirius shared at least one common board member at all relevant times. Id. Defendants Succi and Thomas are employees of Vision. Id. at ¶¶ 6, 7. Succi works and resides in California. Id. at ¶ 7.

For the last several years, there has been fierce competition in the market for data disaster recovery software solutions designed to work with certain IBM server systems. Id. at 12. Maximum entered the market several years after Vision. Id. at ¶ 13. It is now "one of a handful of companies . . . recently competing with VISION and progressively eroding its share of the marketplace." Id. at ¶ 14.

In a document dated June 20, 2009, and entitled "Product Marketing Competitive Brief-Maximum Availability 'noMAX'" (the "Competitive Brief"), Vision allegedly made numerous false and/or misleading statements of fact about Plaintiff, its products, and its services. Id. at ¶ 15, Ex. A. Plaintiff alleges that Vision distributed the Competitive Brief and/or the false information contained therein to customers and potential customers in the market for disaster recovery systems designed for IBM servers. See id. at ¶ 15. The document purports to offer a legitimate comparison of Vision's products to Plaintiffs products, but in fact makes numerous intentionally false and/or misleading statements of fact disparaging Plaintiff's products and services. Id. Another document entitled "Vision HA vs. Maximum Availability 'noMAX' Product Comparison" (the "Product Comparison"), created on June 10, 2008, allegedly also makes numerous false and/or misleading statements of fact disparaging Plaintiff's products and services, and was distributed to prospective customers. Id. at ¶ 16, Ex. B.

Both the Competitive Brief and Product Comparison documents allegedly contain numerous false and misleading statements, including statements designed to mislead customers into believing that Plaintiff is an immature company with inferior product "Functionality," "Reliability," and "Services and Support." See id. at ¶ 17. Among Vision's alleged false assertions are that "over 80 customers have replaced" Maximum's products with Vision's products, and that Plaintiff's products "can take more than 30 days [to install and train] because of the custom coding and testing." Id. at ¶¶ 17-18. Vision also falsely describes Plaintiff's services to mislead customers into believing that it is a small company that has a limited support staff. Id. at ¶ 19.

Defendant Sirius allegedly provided the false advertising materials to a prospective client called Cleveland Golf, Inc., when that prospective client was evaluating the Plaintiff's and Vision's competing products in September 2009. Id. at ¶ 21. Based on this allegation, Plaintiff asserts that Sirius has repeatedly used the false advertising materials in connection with Vision's products. Id.

Defendant Succi, a Territory Sales Manager for Vision, allegedly provided false advertising materials on April 16, 2010, to the Panda Restaurant Group, which was a current Vision customer. Id. at ¶ 22. Of the two documents provided by Succi to the prospective client, one (the "2007 Document") appears to be an earlier 2007 version of the Competitive Brief, but is materially identical. Id. at ¶ 23. Defendant Thomas's name appear in the properties field for this document, reflecting that he was the author. Id.

Plaintiff further alleges that Vision distributed false or misleading statements about Plaintiff on at least two prior occasions - in a product comparison spreadsheet entitled "Echo2 Competition Comparison," and in documents entitled "Spring 2008 PartnerWire Bulletin" and

"CBSI Case Study." See id. at ¶¶ 25 - 32; Exhs. C, D. Plaintiff asserts that Vision's past and ongoing false statements have caused and are continuing to cause Plaintiff irreparable harm. See id. at ¶¶ 35-36.

### 12(b)(6) MOTIONS
### Legal Standard

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), see also Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See Twombly, 550 U.S. at 558-59. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

In deciding a 12(b)(6) motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). The court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. See Barker v. Riverside County Office of Ed., 584 F.3d 821, 824 (9th Cir. 2009); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. See Iqbal, 129 S.Ct. at 1951; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

### Vision's Motion to Dismiss[1]

Vision's stated basis for attacking Plaintiff's Second and Third Claims for Relief is that Plaintiff lacks standing under the UCL and FAL because "Maximum has not, and cannot, allege that money in which it had a vested interest was paid to Vision." Motion 1:26-27. The UCL's

---

[1] It is noted that Plaintiff raises a procedural objection to this Court's hearing Defendants' motion on the ground that Vision has already filed an Answer to Plaintiff's Complaint. However, even if a Rule 12(b)(6) motion is technically barred, the Court would simply deem Vision's motion a motion for judgment on the pleadings.

and FAL's standing requirements are not quite so restrictive, however.

The standing determinations under the UCL and the FAL are the same. See Buckland v. Threshold Ent., Ltd., 155 Cal.App.4th 798, 818 (2007). In order to have standing under the UCL, a plaintiff must have "suffered an injury in fact and [have] lost money or property as a result of unfair competition." Cal. Bus. & Prof. Code § 17204. Several recent California courts have appeared to conflate the questions of entitlement to restitution and standing. In Citizens of Humanity, LLC v. Costco Wholesale Corp., 171 Cal.App.4th 1, 22 (2009), a California court of appeal wrote:

> Business and Professions Code section 17204 . . . provides that an individual may pursue [a UCL] action only if that person has "suffered injury in fact and has lost money or property as a result of the unfair competition." Business and Professions Code section 17203 provides that any person who engages in unfair competition may be enjoined by any court of competent jurisdiction. The statute also provides that the court may order a party who has engaged in unfair competition to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." The question arises whether an individual who has not lost "money or property" of the type that would be subject to a restitution order under Business and Professions Code section 17203 could still have "lost money or property" of the type that would confer standing under Business and Professions Code section 17204. Stated more concretely, Citizens alleges harm to its goodwill, which would not entitle Citizens to restitution. [Citation]. Is the alleged harm to its goodwill nonetheless a loss of "money or property as a result of the unfair competition" sufficient to confer standing on Citizens, so that Citizens may pursue solely an injunctive remedy?
>
> It is not.

Id. at 22. The appellate court then cited Buckland for the proposition that, because plaintiffs in a UCL action are only entitled to injunctive relief or restitution, the "money or property" requirement in section 17205 means that plaintiffs who are not eligible for restitution lack standing. See id. The court concluded that because "Citizens could not allege having suffered losses which would entitle it to restitution, it has no standing to pursue a cause of action for unfair competition." Id.[2]

---

[2] The facts of the Citizens of Humanity case are somewhat unique. There, the plaintiff clothing manufacturer accused Costco Wholesale Corp. of selling apparel that had been stolen from it or conspiring to obtain such goods by fraud. Costco demurred. The trial court sustained the demurrer with leave to amend finding that: 1) plaintiff had not alleged that it was the owner of the clothing at the time it was purportedly stolen; and 2) the fraud claim was not pled with sufficient specificity; and 3) the unfair trade practices cause of action rested merely on "vague conclusions" and not actual facts. However, the

Of course, the fact that an alleged injury to business goodwill might be insufficient to confer standing under the UCL, combined with the fact that damages are not available under the UCL, does not mean that plaintiffs have to allege the type of injury that would entitle them to restitution (as opposed to damages) in order to have standing. There have been courts that have explicitly rejected the <u>Citizens of Humanity</u> holding on that point. <u>See e.g. Swain v. Cash</u>, 699 F.Supp.2d 1109, 1114 (N.D. Cal. 2009). Nevertheless, Vision has cited a trio of cases from this district - all filed by Pom Wonderful, LLC, and all involving alleged false advertising by soft drink manufacturers of the quantity of pomegranate juice in their drinks - in which the district court have embraced this exact reasoning. <u>See Pom Wonderful, LLC v. Coca Cola Co.</u>, 2010 U.S. Dist. LEXIS 55400 (C.D. Cal. May 5, 2010) ("<u>Coca Cola</u>"); <u>Pom Wonderful LLC v. Welch Foods, Inc.</u>, 2009 U.S. Dist. LEXIS 123329 (C.D. Cal. Dec. 21, 2009) ("<u>Welch</u>"); <u>Pom Wonderful LLC v. Tropicana Products, Inc.</u>, 2009 U.S. Dist. LEXIS 127247 (C.D. Cal. Oct. 21, 2009) ("<u>Tropicana</u>"). <u>See also Silvaco Data Systems v. Intel Corp.</u>, 184 Cal. App.4th 210, 245 (2010) ("The 'import' of [§ 17204] . . . 'is to limit standing to individuals who suffer losses of money or property that are eligible for restitution.'") (citing <u>Buckland</u>).

It is fairly clear that Plaintiff in this case has not alleged any injuries that could be addressed by restitution. According to the FAC, Maximum's Second and Third Claims for Relief seek recompense for injury to Maximum's goodwill, FAC ¶¶ 36, 41, inhibiting the growth of Maximum's market share, FAC ¶¶ 36, 41, and lost sales, FAC ¶¶ 41, 55. The court in <u>Citizens of Humanity</u> held that loss of business good will is not a loss of money or property, and cannot be addressed by restitution. 174 Cal.App.4th at 22. Nor can market share be the subject of a "vested property interest." <u>Tropicana</u>, 2009 U.S. Dist LEXIS 127247 at *4. Finally, lost profits "are not restitution - they are damages." <u>Welch</u>, 2009 U.S. Dist. LEXIS 123329 at *10-11 (citing <u>Kelton v. Stravinski</u>, 138 Cal.App.4th 941, 949 (2006). Thus, notwithstanding Plaintiff's insistence that it is "too early to say plaintiff does not have a restitutionary remedy," it probably is not too early to say that Plaintiff has not alleged one.[3]

As Plaintiff notes, however, the California Supreme Court has definitively rejected the notion that a plaintiff does not have standing under the UCL unless he can allege that he is entitled to restitution. <u>See Clayworth v. Pfizer, Inc.</u>, 49 Cal.4th 758, 790 (Cal. 2010) ("Nothing in the statute's language conditions a court's authority to order injunctive relief on the need in a given case to also order restitution. Accordingly, the right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies."). While § 17204 clearly requires a loss of money or property, it is too restrictive of a reading to suggest that Maximum must allege that money in which it had a "vested interest" was

---

plaintiff elected to stand on its pleading and did not amend. Given those facts, the quoted portion of the <u>Citizens of Humanity</u> case is actually dicta since the discussion of standing was unnecessary to the resolution of the appeal as the matter was presented to the appellate court.

[3] Nevertheless, the fight about Maximum's ability to seek restitution may have to wait until another day. <u>Cf. Whittlestone, Inc. v. Handi-Craft Co.</u>, 2010 U.S. App. LEXIS 17133 (9th Cir. Cal. Aug. 17, 2010) (courts are not authorized to strike claim for damages on the ground that it is precluded as a matter of law).

paid to Vision in order to properly allege standing to seek injunctive relief (even though this is what would be required if Maximum wants to ask for any kind of monetary relief).

Examples of a less restrictive reading are not hard to find. In MGA Entm't, Inc. v. Mattel, Inc., 2005 U.S. Dist. LEXIS 18594 (C.D. Cal. Aug. 25, 2005), the district court found that allegations that defendant's conduct affected plaintiff's "ability to attract, hire, and retain employees" were sufficient to allege an injury in fact under § 17204, see id. at *32, even though the plaintiff did not allege that it actually lost any employees. In Finelite, Inc. v. Ledalite Architectural Prods., 2010 U.S. Dist. LEXIS 88041 (N.D. Cal. Aug. 26, 2010), the district court compiled a list of cases holding that a plaintiff's inability to seek restitution does not constitute a bar to seeking injunctive relief. See id. at * 5-6 (citing, with parentheticals, Fulford v. Logitech, Inc., 2009 U.S. Dist. LEXIS 42296, 2009 WL 1299088, at *1 (N.D. Cal. 2009) (noting "a number of courts, subsequent to the enactment of the UCL standing requirement . . . , have found [the] plaintiff has standing under the UCL, irrespective of any such plaintiff's inability to seek restitution from the defendant"); G & C Auto Body, Inc. v. GEICO General Ins. Co., 2007 U.S. Dist. LEXIS 91327, 2007 WL 4350907, at *3-5 (N.D. Cal. 2007) (holding, although plaintiffs could not establish entitlement to restitution, plaintiffs had standing to seek injunction based on plaintiffs' "loss of business caused by [d]efendants' steering of customers away from [p]laintiffs' [businesses]"); White v. Trans Union, LLC, 462 F.Supp.2d 1079, 1083 (C.D. Cal. 2006) (holding that although plaintiffs "would be required to show that [defendant] took money directly from them in order to obtain [restitution], no such burden exists [ ] where [p]laintiffs seek only injunctive relief" under § 17200)).

Vision's response to Plaintiff's Opposition is somewhat difficult to fathom. Vision suggests that "Maximum's opposition conflates the issues of standing and remedies." However, it is almost impossible to construe the argument in Vision's moving papers as being anything other than an argument that Maximum lacks standing because it is not entitled to restitution. And Vision continues to insist that in order to have standing under the UCL a plaintiff must allege either prior possession or a vested legal interest in the money or property it supposedly lost as a result of the defendant's misconduct. The only case it cites for this proposition is Walker v. USAA Cas. Ins. Co., 474 F.Supp.2d 1168 (E.D. Cal. 2007). The Walker court held that "the 'lost money or property' that can be restored pursuant to section 17203 and the 'loss of money or property' required by section 17204" must be "consistently interpreted." Id. at 1172. This reasoning is inconsistent with the California Supreme Court's holding in Clayworth. Maximum's alleged injury - a loss of potential customers due to Vision's alleged false advertising - is along the lines of a classic § 17200 anti-competitive injury, and one that provides Maximum with standing to pursue injunctive relief under the statute.

The motion to dismiss is denied.

### Sirius's Motion to Dismiss

As Sirius observes, the majority of the allegations in the FAC address the conduct and acts of Vision and its employees, with the only substantive allegations against Sirius being found in paragraphs 6 and 21 of the FAC. Paragraph 6 alleges:

> SIRIUS sells computer hardware and software and is a business
> partner and agent of VISION and sells VISION's software in

> competition with Plaintiff and its resellers.  Like VISION, SIRIUS
> is a subsidiary of privately-owned Thoma Bravo, LLC.  Sales
> representatives of SIRIUS were using the same false advertising
> materials and misrepresentations as alleged herein.  Vision and
> Sirius shared at least one common Board member at all relevant
> times.

Paragraph 21 alleges:

> Defendant SIRIUS provided the false advertising materials
> (Exhibits A and B) to a prospective client (Cleveland Golf Inc.,
> located at Huntington Beach, California) when that prospective
> client was evaluating the Plaintiff s and VISION's competing
> products in September 2009.  It is believed that SIRIUS has
> repeatedly used the false advertising materials in selling (or
> attempting to sell) VISION's products in competition with the
> Plaintiff and its resellers.

As Sirius's challenges to Plaintiff's UCL and FAL claims are essentially the same as those raised
by Vision (with the exception of two arguments - one, that Maximum has not alleged the element
of scienter under the FAL, and another, that Maximum has not stated these fraud-based claims
with the degree of particularity required by Rule 9(b) -  that are addressed below), the arguments
that are directed to Plaintiff's Lanham Act claim are considered first.

<u>Plaintiff's Lanham Act Claim</u>

        In its First Claim for Relief, Maximum alleges that Defendants made false statements
about Maximum's product in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
15 U.S.C. § 1125(a)(1)(B) provides in pertinent part:

> (1) any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any word,
> term, name, symbol, or device, or any combination thereof, or any
> false designation of origin, false or misleading description of fact,
> or false or misleading representation of fact, which . . . (B) in
> commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or
> another person's goods services, or commercial activities, shall be
> liable in a civil action by any person who believes that he or she is
> likely to be damaged by such act.

        "The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement
of fact by the defendant in a commercial advertisement about its own or another's product; (2)
the statement actually deceived or has the tendency to deceive a substantial segment of its
audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4)
the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has
been or is likely to be injured as a result of the false statement, either by direct diversion of sales
from itself to defendant or by a lessening of the goodwill associated with its products."
<u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. Cal. 1997) (footnote

omitted). Representations constitute commercial advertising or promotion under the Lanham Act if they are: "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services;" and "(4) disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." Rice v. Fox Broad. Co., 330 F.3d 1170, 1181(9th Cir. 2003); Coastal Abstract Serv. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999).

  Finally, to state a claim under the Lanham Act, plaintiff must allege that the defendant caused its false statement to enter interstate commerce. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002). It is the statement itself, rather than the falsely advertised goods or services, which must be used in interstate commerce. Southland Sod Farms v. Stover Seed Co., 108 F. 3d 1134, 1139 (9th Cir. 1997).

  Sirius raises essentially three arguments for why Maximum has not stated a claim against it under the section 43(a) of the Lanham Act. First, Sirius argues that Maximum has not alleged "that SIRIUS authored, created, contributed, or had any involvement whatsoever in the creation or making of the subject statements." Motion 9:13-15. Second, it argues that, because there is no factual basis for the allegation that Sirius "repeatedly used" the advertisements when selling Vision's product, Plaintiff cannot satisfy the "commercial advertising or promotion" element of its Lanham Act. Third, it argues that the FAC fails to allege sufficient facts to show that Sirius caused false statements to enter interstate commerce.

  As to the first point, Maximum correctly notes that the Lanham Act does not require that the defendant make the false advertising, but merely that it "use" it in commerce. Maximum correctly observes that Sirius's citation to Campagnolo SRL v. Full Speed Ahead, Inc., 2010 U.S. Dist. LEXIS 49707 (W.D. Wash., May 20,2010) is off point, because, in that case, the court found that defendant Tien Hsin did not "contribute[] to [the] advertisements, review[] the advertisements, or participate[] in their creation or dissemination in any way." Id. at *8. Here, Plaintiff has alleged that Sirius "used" the false advertising in competition when it provided the false advertising statements to a prospective customer, Cleveland Golf, while it was competing against Plaintiff for that customer. Thus, the FAC satisfies the requirement of alleging that Sirius used the supposed false advertising in commerce.

  But was Sirius's dissemination of the supposedly false statements widespread enough for it to be considered "advertising?" Here, the FAC is on less secure footing. Maximum correctly asserts that it is entitled to all reasonable inferences from the allegations stated in the complaint, but then relies upon a host of facts that are extraneous to the pleading to argue that it would be reasonable to infer that Sirius repeatedly used the allegedly false statements  See Opp. 4:12-28. If this is the argument, these facts need to be somehow incorporated into the complaint.

  Sirius is arguably right that there are insufficient facts alleged in the FAC for the Court properly to infer that Sirius caused its false statement to enter interstate commerce. Maximum must amend its complaint in this regard.

### Plaintiff's UCL and FAL claims
#### 1. Rule 9(b)

  In addition to arguments concerning Maximum's supposed lack of standing to assert claims under the UCL and FAL, Sirius also argues:

> Ultimately, because both [of Maximum's state law] counts are premised on fraud, MAXIMUM has not and cannot plead either claim with particularity against SIRIUS as required by Rule 9(b). See Kearns, 567 F.3d at 1125, 1127 (with respect to advertisements, a plaintiff must "articulate who, what, when, where, and how the alleged the misconduct alleged"). Neither claim articulates how or why SIRIUS, as opposed to another defendant, is liable under either UCL or FAL. As to both counts, therefore, SIRIUS should be dismissed.

Motion 14:9-14. Initially, this Court disagrees that both counts are necessarily premised on fraud. Maximum is not claiming that it is the victim of fraud by the Defendants, rather that the Defendants are using "false and/or misleading statements of fact in . . . advertising and marketing materials".

As held in Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009):

> The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and "unfair, deceptive, untrue or misleading advertising." * * * *
>
> While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct. A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).* * * *
>
> . . . "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).

In Kearns, the plaintiff's complaint was found to allege a unified course of fraudulent conduct because the plaintiff himself (and his purported class) consisted of persons who were mislead by the misleading statements of the defendants (i.e. he himself was a victim of fraud and that was the only basis for his claim for recovery). Maximum is not making similar contentions here.[4] See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

### 2. Scienter

Sirius argues that the current pleading does not satisfy the scienter element of § 17500, which requires a showing that a defendant either knew the advertising was false or misleading, or in the exercise of reasonable care should have known it to be. See People v. Forest E. Olson,

---

[4] Even assuming arguendo that Maximum were proceeding under a "fraud" theory, the allegations of the FAC would be sufficiently specific in regards to the fraudulent component of its claim. Plaintiff specifically alleges that Sirius provided false advertising materials (which are attached to the complaint) to a prospective client that is identified by name in September 2007.

Inc., 137 Cal.App. 3d 137, 139-40 (1982). Plaintiff in its opposition urges that the complaint is capable of amendment to "allege that Sirius and/or its employee(s) intended to perform services on behalf of Vision and itself in competition with Plaintiff; and repeatedly disseminated advertising which: (1) contained a statement which was untrue or misleading, and (2) which the defendant knew, or reasonably should have known, was untrue or misleading. Leave to amend may obviously be granted.

### Conclusion

Vision's Motion to Dismiss, which is premised almost entirely on Plaintiff's supposed lack of standing to assert claims under California's UCL and FAL, would be DENIED. There is no obvious lack of standing. Sirius's Motion to Dismiss would be GRANTED WITH LEAVE TO AMEND as to Plaintiff's Lanham Act claim and FAL claim and denied as to the UCL claim.

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
### Legal Standard

The legal standard for testing personal jurisdiction over a non-resident defendant was fully set out in this Court's minute order dated April 20, 2010. It is restated in pertinent part as follows.

"Personal jurisdiction over a nonresident defendant is tested by a two part analysis." Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005). First, the exercise of personal jurisdiction must satisfy the requirements of the applicable state long-arm statute, and second, it must comport with federal due process. Id. When no applicable federal statute governs personal jurisdiction, the law of the state in which the district court sits shall apply. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Traditionally, a California district court may exercise jurisdiction over a defendant if the defendant: (1) is personally served while physically present in California; (b) is domiciled within the state; or (c) consents to jurisdiction. See Burnham v. Superior Court, 495 U.S. 604, 609 (1990); see also Metro-Goldwyn-Mayer, Inc. v. Grokster, Ltd., 243 F.Supp 2d 1073, 1082 (C.D. Cal. 2003). In addition, based on California's long-arm statute, a district court may exercise jurisdiction over a defendant on any basis consistent with due process. See Fed.R.Civ.P. 4(k)(1)(A); Cal. Code Civ. P. § 410.10; see also Ballard v. Savage, 65 F.3d 1495, 1500 n.4 (9th Cir. 1995); Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). The Due Process clause of the Fourteenth Amendment requires some "minimal contacts with the forum state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Plaintiffs have the burden of establishing that defendants have sufficient minimum contacts with California to satisfy due process. See AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). Where no evidentiary hearing is held, dismissal is appropriate only if a plaintiff has not made a prima facie showing of personal jurisdiction. See id. In determining whether a plaintiff has made a prima facie showing, "uncontroverted allegations in [plaintiff s] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs] favor.'" Id. In resolving conflicts, however,

"[a] prima facie showing must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts." Oakley, Inc. v. Jofa AB, 287 F.Supp.2d 1111, 1114 (C.D. Cal. 2003).

Plaintiffs may show the existence of either general personal jurisdiction or specific personal jurisdiction. A court may exercise general jurisdiction over a defendant when the defendant is a resident or domiciliary of the forum state, or if his contacts with the forum state are continuous, systematic, and substantial. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). In order to establish specific personal jurisdiction, three elements must be met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Brayton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of proof in showing the first two elements, with the burden then shifting to the defendant to show the lack of the third element. Burger King Com. v. Rudzewicz, 471 U.S. 462, 476-78, (1985).

The first element requires that the defendant will not "be haled into court based upon random fortuitous or attenuated contacts with the forum state." Id. The purposeful direction analysis involves a three-part "effects" test that requires that the defendant have "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000); Schwarzenegger, 374 F.3d. at 805. The plaintiff bears the burden of satisfying all three parts of the test. Schwarzenegger, 374 F.3d. at 805.

With regard to the second element of specific personal jurisdiction, a remote action such as entering a product into the stream of commerce (without more) does not suffice - the defendant's involvement must affect the forum state. World Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 287 (1980).

The third element should be analyzed according to the following factors: (1) extent of defendant's purposeful availment, (2) burden on defendant, (3) conflict of sovereignty with defendant's state, (4) forum state's interest in litigation, (5) interstate interest in efficient adjudication, (6) plaintiff's interests, and (7) existence of an alternate forum. Burger King, 471 U.S. at 476-78; Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1487-88 (9th Cir. 1993).

### Analysis

There cannot be any question that general jurisdiction over Defendant Thomas is lacking.

Thomas lives and works in Illinois as the Marketing Programs Manager for Vision. Declaration of Chris Thomas ("Thomas Decl.") ¶¶ 2, 3. He is not a resident of California, does not own any real property or personal property in California, is not registered to vote in California, does not have any California bank accounts, does not have a California driver's license, or any other license or other certification from California, does not own or operate any vehicles registered in California, is not required to and does not pay California income or property taxes, and does not own or operate any business that is organized under the laws of California or that conducts business in California. Id. at ¶ 6. Since 1999, Mr. Thomas has been to California once to attend a trade show in October, 2006, on behalf of his former employer, and never in connection with any Vision business. Id. at ¶ 7.

The Court also cannot find that it has specific jurisdiction over Thomas. Thomas was first employed by Vision on October 24, 2007. Id. at ¶ 3. He has stated that he is not responsible for looking at products offered by competitors of Vision and does not have detailed or complete knowledge of any products offered by Vision's competitors, nor of the features of those products. Id. at ¶ 9. He had no role in the creation of the 2007 document, and was not employed by Vision at the time it was created. Id. at ¶ 5.

Even if the Court were to assume that Thomas was the author of one of the documents at issue, Plaintiff cannot meet its burden of proving purposeful availment. Plaintiff's only assertion against Thomas is that his "name appears in the properties field" for the 2007 version of the document that Mr. Hammond allegedly authored in 2009. No facts are alleged that indicate that Thomas "expressly aimed" his conduct to California, or that he knew that his conduct was likely to result in harm in California. He has stated that he has no knowledge regarding Maximum's operations, marketing activities or customers in California, and did not know that Maximum had a sales office in California until after this case was filed. Thomas Decl. ¶¶ 12, 13.

Finally, even if the Court were to find that Plaintiff's showing on minimum contacts is sufficient, the Court probably would find that it would be unreasonable to exercise jurisdiction in light of the Burger King / Core-Vent factors.

Plaintiff's entire opposition hinges on the fact that Thomas's name appears in the "author" field of the document that was provided to Cleveland Golf. This fact is not sufficient to support the exercise of jurisdiction. Thomas notes that the Brief he supposedly authored was not sent to a customer in California until three years after it was written, see FAC ¶¶ 22, 23, and after Mr. Hammond purportedly authored a "materially identical" document, FAC ¶ 15. The time between creation and distribution illustrates the fact that the 2007 Brief's distribution in 2010 was "as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person,'" and not the actions of Thomas. Doe v. American Nat. Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997) (quoting Burger King, 471 U.S. at 475). Plaintiff is wrong in suggesting that by merely authoring the document, Thomas should have expected to be haled to court anywhere Vision did business. For Thomas to have "purposefully directed" his activities to the forum, he had to have "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Brayton Purcell, 575 F.3d at 986.

Finally, although Plaintiff seeks leave to take "limited jurisdictional discovery from Thomas in the same manner the Court authorized Plaintiff to take jurisdictional discovery from individual defendant Hammond," it has not indicated how it expects such discovery to lead to

-12-

proof of any basis for jurisdiction.  There would be no justification whatsoever in granting Plaintiff leave to take jurisdictional discovery as to this defendant.

**Conclusion**

Thomas's motion to dismiss for lack of personal jurisdiction would be GRANTED.  The parties may address at oral argument whether it would be appropriate to allow Plaintiff to amend to attempt to allege a basis for the exercise of personal jurisdiction over Thomas.  Nothing in Plaintiff's papers suggests that it would be able to do so.